# NO. 12-18-00318-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 321ST* |
| *O.C. AND O.C,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

B.J.S. appeals the trial court's summary judgment granted in favor of J.H. and K.H. and denying his petition for bill of review.[1]  He presents three issues on appeal.  We affirm.

## BACKGROUND

B.J.S. and K.C. are the parents of O.C. and O.C.1.[2]  The Department of Family and Protective Services (the Department) filed an original petition for protection of a child, for conservatorship, and for termination on May 12, 2015 regarding O.C.  The Department was named temporary sole managing conservator of O.C. that day.  The Department filed an original petition for protection of a child, for conservatorship, and for termination on March 17, 2016, regarding O.C.1, who was born on March 12, 2016.  The Department was appointed sole managing conservator of O.C.1 the same day.  In July 2016, J.H. and K.H., the children's foster parents, filed a petition for intervention for conservatorship of the children.

The parties attended two different mediations and reached a settlement agreement during the June 13, 2017, mediation.  B.J.S. also executed affidavits for voluntary relinquishment of his parental rights to both O.C. and O.C.1.  At a hearing on June 14, 2017, B.J.S. testified that he

---

[1] To protect the identities of the children who are the subject of this suit, we use initials to identify the various parties involved.  *See* TEX. R. APP. P. 9.8(b)(2).

[2] K.C. is not a party to this appeal.  Because the children have the same initials, we refer to them as O.C. and O.C.1.

knowingly, freely, and voluntarily relinquished his parental rights to O.C. and O.C.1. The court terminated B.J.S.'s parental rights on August 4, 2017.

On February 1, 2018, B.J.S. filed a petition for bill of review requesting the trial court set aside the voluntary relinquishments of parental rights to O.C. and O.C.1. B.J.S. asserted that J.H. and K.H. induced him into relinquishing his parental rights by promising that B.J.S. would maintain contact with O.C. and O.C.1. if he relinquished his rights, when they never planned to keep that promise. K.H. and J.H. filed a traditional motion for summary judgment on grounds that B.J.S. could not meet the elements for a bill of review. The trial court granted that motion and denied the petition for bill of review. Specifically, the trial court found "that there is no genuine issue of any material facts regarding the elements of a Bill of Review, and that [B.J.S.] was negligent and is not entitled to a Bill of Review as a matter of law." This appeal followed.

## MOTION FOR SUMMARY JUDGMENT

In his three issues, B.J.S. argues that a fact issue exists as to whether (1) he has a meritorious defense; (2) he was prevented from presenting a meritorious defense; and (3) his failure to assert a meritorious defense is due to his own negligence.

### Standard of Review

The standard for reviewing a traditional summary judgment is well-established. The movant for traditional summary judgment bears the burden of showing the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When the movant seeks summary judgment on a claim in which the nonmovant bears the burden of proof, the movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to respond to the motion and present the trial court with any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). Generally, a trial court may not consider summary judgment evidence not referenced in or incorporated into the motion. *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 236 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**Applicable Law**

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam). "Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review." *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam); *see also Alderson v. Alderson*, 352 S.W.3d 875, 878 (Tex. App.—Dallas 2011, pet. denied).

To set aside a judgment by bill of review, the petitioner must plead and prove the following: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that he was prevented from making by the fraud, accident, or wrongful act of his opponent, (3) unmixed with any fault or negligence of his own. *Caldwell*, 975 S.W.2d at 537. The grounds upon which a bill of review can be granted are narrow because the procedure conflicts with the policy that judgments must become final. *Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 407 (Tex. 1987).

A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit. TEX. FAM. CODE ANN. § 161.211(c) (West 2014). The elements of fraud are as follows: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In Interest of K.D.*, 471 S.W.3d 147, 157 (Tex. App.—Texarkana 2015, no pet.); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Reliance must be actual and justified. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). In determining whether fraud existed in the execution of an affidavit of relinquishment, courts look to the circumstances surrounding its execution. *Vela v. Marywood,* 17 S.W.3d 750, 762 (Tex. App.—Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex. 2001) (per curiam); *see also In re D.E.H.,* 301 S.W.3d 825, 828 (Tex. App.—Fort Worth 2009, pet. denied) (en banc).

**Analysis**

We begin our analysis by addressing issue three, as it is dispositive. According to B.J.S., J.H. and K.H. made an unenforceable promise to him, which they never intended to fulfill, and

3

that but for that promise, he would not have relinquished his parental rights to O.C. and O.C.1.  He further argues that his reliance on the unenforceable promise prevented him from presenting his meritorious defenses when his rights were terminated and that this failure was not the result of his own negligence.

The summary judgment evidence showed that K.H. sent B.J.S. a text message that said, "If you [relinquish] quickly and voluntarily[,] we will keep you involved.  If we have to waste one more dollar and anymore [sic] time it's going to piss us off and there won't be contact.  Your call." At trial, J.H. agreed that he and K.H. were representing that they would allow B.J.S. to maintain contact with the children, as appropriate.  B.J.S. believed that if he signed the affidavits of relinquishment, he would have contact with the children via unsupervised visitation on the first, third, and fifth weekends and he could share holidays.

Immediately following trial, B.J.S. asked to see the children on Father's Day, which was four days later.  K.H. was angry at B.J.S. for telling her that K.C. had relinquished her rights when she had not.  K.H. responded to B.J.S.'s request, "I'm way to[o] pissed and disappointed to deal with you right now after pulling that stunt at court.  You can try going through [J.H.] for stuff . . . but apparently you do not understand the concept of working to gain OUR trust so we can involve you with our children."  She also stated, "You need to give us time to process this crap you threw at us."  On Father's Day, B.J.S. sent K.H. a text message asking her to "let the kids know [he] love[s] them."  The following Thursday, B.J.S. again asked to see the children.  K.H. responded:

> I asked you to go through [J.H.] please stop harassing me!!!! Ps… when you screwed up the 1st time you had no problem going close to 2 months without even asking if they were ok. So now we want a break from you. Respect that. Let our family get into its new rhythm.

The final order was signed on August 4, 2017.  Following the entry of the final judgment, B.J.S. continued to ask about the children's well-being and ask to see them.  He received no response from K.H.

B.J.S. testified via deposition that he learned online that the judgment had been entered. Although he did not remember the exact day he discovered this fact, he acknowledged checking the website routinely.  He further testified that nothing prevented him from going to the courthouse and complaining that J.H. and K.H. had not let him see the children.  B.J.S. admitted that it

4

"seem[ed] logical" that a litigant would have to complain about the results of a trial. B.J.S. waited almost six months to retain counsel because he "was giving the foster parents an opportunity to make good on their promise."

Viewed in the light most favorable to B.J.S., the summary judgment evidence shows that B.J.S. was aware, early on, that he would not be permitted to see O.C. and O.C.1. K.H. repeatedly refused to allow B.J.S. to see the children and stopped responding to his text messages. These actions occurred while the trial court retained jurisdiction, yet B.J.S. chose not to pursue any legal remedies. B.J.S. did not file any motions with the court prior to his petition for bill of review in an attempt to bring his dissatisfaction to the court's attention. Awareness of a legal remedy and a decision not to pursue it precludes subsequent equitable relief. *In Interest of Child*, 492 S.W.3d 763, 769 (Tex. App.—Fort Worth 2016, pet. denied). Likewise, awareness of a legal remedy and a decision to delay pursuit of it does not constitute a good excuse for the failure to pursue it. *Id.* As a result, the trial court could reasonably conclude that B.J.S. was aware, almost immediately after trial, of the representations that he now contends were wrongful and caused him to sign the relinquishments, but he made no attempt to pursue any legal remedy and, consequently, B.J.S.'s negligence contributed to his failure to timely assert his defenses. *See Caldwell*, 975 S.W.2d at 537. Because there is no genuine issue of material fact with respect to this issue, we conclude that the trial court did not err in granting K.H. and J.H.'s motion for summary judgment. *See* TEX. R. CIV. P. 166a(c). We overrule B.J.S.'s third issue and need not address his first and second issues.[3]

## DISPOSITION

Having overruled B.J.S.'s third issue, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 29, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[3] *See* TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 29, 2019**

**NO. 12-18-00318-CV**

**IN THE INTEREST OF O. C. AND O. C, CHILDREN**

Appeal from the 321st District Court
of Smith County, Texas (Tr.Ct.No. 18-0234-D)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **BRYCE JASON SIMON**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*